May it please the Court, Counsel Nadia Dahab for petition. Your Honors, in 1996, Congress amended INA Section 239 or 1229A.1 to create a mechanism that would assure individual accountability to appear and participate in removal proceedings. To do so, it added a provision requiring individuals in removal proceedings to provide the government with an address at which that individual could be contacted, which the government could then use to issue notice of any upcoming hearing. If the individual did not provide that address, they would not receive written notice, and they could be removed in absentia for failing to appear. In this case, Ms. Luna-Garcia complied fully with the INA's requirement that she provide an address at which she could be contacted respecting her removal proceedings. When she was apprehended at the border, she provided the government with her home address in Guatemala. For her, that home address was the most consistent address that she had, certainly the most reliable for notice purposes. Notwithstanding having complied fully with the statute, the government never provided Ms. Luna-Garcia with written notice of her upcoming hearing, to which she was entitled under the statute. But she provided on the form following the show cause. She provided to the Border Patrol agent when she was apprehended at the border. In this case, there was a notice to appear, and then an order to show cause. In this case, the order to show cause instructed Ms. Luna-Garcia to provide the INS in writing with her mailing address. She had just done that to the Border Patrol agent that apprehended her at the border. That's shown on the form I-213. It shows the address at which she could be contacted for removal proceedings going forward. So how could she be contacted there? Could she be certified male there? Do you have any evidence in the record that she could have been certified and be certified male there? Well, there was no, after 1996, there was no requirement that she provide an address at which she could receive certified male. Could she be personally served there? She could be, the government could put a notice in the mail and she could receive delivery. That's not personal service for under Hague Convention for a foreign country, is it? Your Honor, this statute requires only that she is able to receive, she's able to provide an address at which she could be contacted, and the government provide written notice. It doesn't require personal service or certified mail, an address at which she could have received certified male. Here she provided, again, to serve that accountability loop that Congress intended to create under the amended provisions of the INA, an address at which she could be contacted. The government could have sent her a written notice of that address as it was required to do under the statute, but it failed to do that. That was all that Ms. Luna-Garcia was required to do under the statutory provisions in place at this time. Was she required to update? She, Your Honor, there was no need for her to update her address because she never had a change of address, at least for the purposes of notice. Again, the statute requires her to provide an address at which she could be contacted for notice purposes. Her address, her home address in Guatemala, was the most appropriate address. Was that her specific and personal address in Guatemala? That was her, in her village in Guatemala, they received those notices through general delivery. But it would have, there's an affidavit in this record stating that she would have received the notice if it were sent to that address. How would she receive it? Her family would have received it in the village, and she's been in touch with her family since she entered the United States. Her affidavit says she didn't receive the form to change, but we have to assume that she did for purposes of our argument today, don't we? I'm sorry? Her affidavit says that she did not receive the form to change her address, but we have to assume that she did, in fact, receive the form based upon the rulings of the BIA, don't we? I don't, I don't, I don't think so, Your Honor. I hear, I mean, I don't know if the BIA ruling specifically addressed that. And in all events, the BIA ruling here makes clear that the address that she provided was a good address. The only issue is whether, under the statute, the fact that it was a foreign address didn't satisfy the requirements. So there's no question here that she receives an address, that she gave an address at which she could have received delivery of a written notice from the government of her removal proceedings. The agency has not, the BIA has not questioned that on this record. In this posture, Your Honor, Your Honors, this petition for review turns solely on the meaning of 239A1F, the provision that requires a non-citizen to provide the government with, quote, a written record of an address at which the alien may be contacted respecting proceedings. The government construes that provision to require a non-citizen to provide the government with a U.S. address. That construction, respectfully, is plainly wrong based on the statute's text, the context based with its surrounding provisions, and the practice of the agency itself having developed a whole system sort of premised on this assumption that any address is sufficient so long as the government can use that address to hold the individual accountable to appear and participate in their proceedings. To contact them. To contact them. Which you say had no requirements of personal contact or certified mail at this time. That's correct. Okay. Did she legally re-enter in 2014? She voluntarily departed in 2007 and then re-entered the United States in 2014. That's correct. So she legally re-entered because she was told that she wasn't here appropriately in 2004, right? Well, she was never told she wasn't here appropriately in 2004. She was never, you know, she never received an order of removal because she never received notice of her hearing. So, and given that she never received notice, as the BIA has told us, when that occurs, that order of removal is void ab initio. But she's removable for that reason alone. Sorry? Isn't she removable for other reasons apart from whether or not she got her address correct in this case? I don't think so, Your Honor. I'm not sure I... Okay. No. You know, she... But this is an unusual situation. Sure. She... She's coming and going and that sort of thing. Sure. I mean, she didn't receive proper notice of her individual, of her original hearing. Not that unusual. But different than the last case. Right. Right. You know, given that she didn't receive the proper notice, that removal order, at its inception, is void. And if this court, and we requested the court, grant the petition and remand it back with an order to rescind that order of removal, Ms. Luna-Garcia can apply for all the forms of relief to which she's entitled under the immigration laws, including asylum. So, Ms. Luna-Garcia asked the court to construe this text without any deference to the agency because the agency's construction is inconsistent with its own practice, is inconsistent with the case law that it cites, and, frankly, the text of the statute itself is unambiguous in this respect. That the only... Watch that out when you say inconsistent with their own practice. Sure. Sure. So, the agency here has developed, has promulgated regulations pursuant to the INA and has developed forms that it's used to manage and implement removal proceedings. Those regulations, the regulations themselves certainly contemplate that an individual can be served and can be contacted at a foreign address, and that's, a foreign address is sufficient for notice purposes. You know, CFR 1003.15B7 contemplates a current address and telephone number with no limitations on whether that address is domestic or foreign. .26A requires that the IJ be satisfied that notice of the proceedings was provided to the applicant at the most recent address on file, again, without limitation. And they go on and on in .37, .32, all call for contacting the individual at their most recent address. Again, no limitations. I will also point out that the EOIR form 33, the change of address form itself, permits an individual to change his or her address with the immigration court to an address in care of another person in a country other than the United States. So the forms themselves contemplate that a foreign address certainly is sufficient for this statute. Counsel, do you want to address the Hernandez-Castillo issue? There's no process right. There's discretionary relief, and so we shouldn't remand. So, right. You know, precisely, Your Honor, there is a statutory right here to reopening and rescinding a removal order that's void at its inception, and the lack of notice itself is a fundamental due process protection that Congress has provided. Is it void at its inception, or is it voidable? It is void at its inception. What case says that? You know, the BIA has characterized an order of removal that's issued with lack of notice in a matter of boldness in Alaska, 25 INN decision 57, a 2009 decision, as void at its inception. And so how do you distinguish the case? Or you think, how is your situation different than the situation, your client's situation than the situation in Hernandez-Castillo? I mean, the situation in Hernandez-Castillo, the individual there never provided any address. Right, but the court went on to say that even if she had no duty to provide any address, she still loses. And we have, that's a binding precedent of our, of our circuit. Your Honor, I think the statute clearly, clearly provides that statutory. Are you saying the case is wrong? You need to, if the case says she still loses, regardless of whether she had a duty to provide or not. I don't think that's what the statute says, though, Your Honor. I think the statute says that. So what is your view of the case? You have to tell me what the case says. Respectfully, I'm not sure the case is, the petitioner argued that, indeed, there is a liberty interest in the reo, the reo, the right to reopen the room. So you disagree with the case? That's correct. Okay. That's, you're allowed to do that, but you have to answer. Sure. And I would like to reserve, if the court will allow, my remaining time for rebuttal. Certainly. Thank you. Good morning, Your Honor. May it please the Court, Eric Anderson, representing the Attorney General. It's quite obvious this case has big similarities with the previously argued case. Ms. Luna-Garcia's petition for review is different, and the government would like to explain that the reason for its different means of handling these two cases is because in Ms. Luna-Garcia's case, the Board dismissed her appeal from the denial of the motion to rescind based solely on her communication with DHS in 2004. It made no reference to any communication, lack of communication, or duty to communicate with the Immigration Court following service of the notice to appear. But different. Tell us why that's significant. Well, that's significant because, I don't know if this would just eliminate a question Judge Willette asked. I mean, the big issue here is DHS is not the Immigration Court. DHS serves the charging document. The charging document normally conveys to the Immigration Court, where am I going to contact this person, put the address on there. When they don't, however, the regulation, 1003.15d, is very clear. The burden is on you, and there's no hiding the ball here. Ms. Luna-Garcia was personally handed the notice to appear. It was very clear to her that her address was not on the front of it, and therefore, the regular duty to contact the Immigration Court fell upon her to provide written notice within five days, and there's no claim that she ever did so. But the Board did not rely on that here. And just applying longstanding rules of administrative law, where the Board's decision has to fall or stand based on the reason it provided, the government would renew its request to the Board to address, if necessary, its conclusion that a foreign address was not an address. Why do we need to do that? Well, Your Honor, the statute provides something more than just the minimum due process limits, and if the Board committed an error of law, that's one of the factors that courts will look at. Are you conceding that the Board committed an error of law here? No, Your Honor. Okay. You're really losing me. I think the Board — if the Court were to ultimately conclude in a proper case where we've had the Board exercise its authority to interpret, it's not — just imagine a court says the Board got the statute wrong. That's always a possibility. And when the Board does do that, then it — that's one of the factors in concluding that the Board had abused its discretion in denying a motion to reopen. Could you — could you get the law wrong, but still not abuse your discretion? Because — because it's not critical to the overall totality of the situation. Absolutely, Your Honor. It's not a — I don't think the conclusion that an error of law occurred compels granting a petition for review, but it's just one of the factors to be considered. You can abuse your discretion and make an error of law if there are a lot of other circumstances that would also support the decision. Okay. I'm still unsure what you think the proper disposition of this case is. Well, Your Honor, I think we have an ambiguous statute that the Board needs to — we've asked to remand to the Board to exercise its authority to interpret in the first instance. That's the resolution you seek in this case? More than once we've sought it, Your Honor. We — I believe the statute is not unambiguously in Ms. Luna-Garcia's favor. If it was unambiguously in her favor, the Court could hold so now. But we have a statute saying that she must provide an address where she can be contacted — she, not her mother, father-in-law, or cousin. So why is it different than their case, where your colleague did not argue this at all? Why is — why are you arguing this? Because, Your Honor, the Board did not invoke the duty to contact the Immigration Court in my case. The Board looked solely on the conversation that Ms. Luna-Garcia had with DHS in 2004. So the Board doesn't have a good enough record to do what she's asking for in her case — your colleague is asking for. The face of my Board decision doesn't provide — Yeah, so you need a better Board decision, is what you're saying. That's right. And there's a flip side — you know, Ms. Luna-Garcia depicts that as a second bite at the apple. Well, there's a flip side of that, whether an overburdened agency can be compelled to grant relief that Congress said it shouldn't do. The Board could have provided an interpretation on — there is, frankly, not much of an interpretation in the decision under review, and that's why we've asked it to be sent back. So you're saying, factually, she had this obligation, and she should have met it, and she didn't meet it. That's right. But that's not the reason that was explained by the Board, and so we have to send it back so the Board can now explain that, if they choose to. Yes, Your Honor. Or, I mean, I owe it to my client to give them an opportunity. If they really want to bite on this for an address that does not qualify, that's what I'd be seeking an opportunity to do to that. Once we accept that the statute is ambiguous, there are certainly things to be said in Ms. Luna-Garcia's favor. We know that notice sometimes is provided to foreign countries, and we know sometimes it's required to be provided to foreign countries. That would be mostly Mexicans or Canadians who present themselves at the border. DHS can't immediately tell if they're admissible, so they go to their homes to await their hearing. Is she in status now? No, no. She is not. She's — she left. She illegally — Right. So she's not in any legally protected status to be here, is she? That's correct, Your Honor. She's removable at any time. I don't believe there's been any stay of removal. So DHS could remove her at any time. Okay. But just to say that there are things to be said in favor of a conclusion that a foreign address does not qualify. Imagine a young woman fleeing her husband or a father in a foreign country coming here to seek asylum. Whether that's a violent asylum claim or not, the government may decide, well, we don't really want to send mail to the persecutor's address. At the same time, the board has had 30 years of working with in absentia orders, and it knows what things mean when they get returned by the post office — if the post office says this address doesn't exist, or if the recipient refused receipt, or if the recipient got it but said the return to sender no longer lives here. We know what those mean. I don't think we know what the Guatemalan post office would do in any particular instance. How would we know what to do with the board's in absentia rules? Why are these novel claims coming 30 years? Were these claims not considered before? Why is this now? I'm not sure I have a good answer to that, Your Honor, or I could say I'm sure I don't have a good answer to that, Your Honor. Obviously, we have two of these cases on the same day today, and we have more — as many of these as any other circuit in America per judge, we have — you know, the Ninth may have more total, but we have less judges, so — and we don't have this argument, and we haven't had this argument. What's going on? It's new, Your Honor. I would just agree that I had not seen it before either. Okay. You said notice is sometimes provided to foreign countries, and you explained a little bit of that, but can you flesh that out for me? Well, there's a statute governing what's called an expedited removal proceeding, and that's when you come and you present yourself procedurally, proper fashion to the DHS official at the border, and they have to determine whether you're admissible or not. You know, if you don't have travel documents, you're not admissible. Other times you might have a visa, but there's indication you have a foreign conviction or something, and they can't tell right away if you are admissible to the United States. And there's a statute providing contiguous countries, i.e., Mexico and Canada, we can make you go back there while we determine whether this — whether to admit you. And in those cases, they necessarily receive notice at their address in Mexico or Canada. This is, by the way, this is an address where they actually are. It's not an address — we know when she provided her address to DHS, she had no intention of going back to Guatemala. She was headed to New York to seek employment. Is that all you have, or do you have something further? I believe I've made my point, Your Honor, and I would just respectfully ask that the case be remanded. It's been about 30 seconds, and explain to me with precision, again, if you can, the distinctions between how this case is teed up and how the preceding case is teed up. The distinction is based on the reason provided by the Board for dismissing the appeal. In the prior case, the Board correctly relied on the regulatory obligation. Once you've got your charging document, if it says on the front they ought to provide a U.S. address, you have to contact the immigration court directly. No matter what conversations you've had with DHS, you have to contact the immigration court in writing. Here, in Ms. Luna-Garcia's case, the Board made no mention of any such duty to contact. It just relied on the substance of the conversation with DHS. Thank you, Your Honor. Thank you. We have your argument. Do you have a rebuttal, counsel? Thank you, Your Honors. I just want to make clear a few things in response to the government's points. First of all, in this case, there's no need to remand this case back to the agency. This case presents, tees up for this court, is the best vehicle for the court to address the statutory construction issue presented under 1229.239A1. I think we should do this before the agencies had an opportunity to address it. This is a novel issue that would affect thousands of cases, and we're supposed to just do this on our own without having any guidance from the BIA. Both the immigration court and the BIA squarely addressed the issue that's presented before this court today, and that is the statutory construction question of 1229A1. The agency got it wrong. The agency reached an incorrect construction of what Petitioner sees as an unambiguous statute. Because that is so, this court need not defer to the agency's instruction. In fact, the Supreme Court, in its most recent case in Pereira v. Sessions, makes clear that when the statute is unambiguous, there's no need to defer to the agency. But what if we concluded that if we interpreted the statute the way you insist, it would lead to an absurd result, that is, virtually require no address for the purposes of the statute? I mean, respectfully, and I'm not sure that's necessarily true, the statute contemplates, you know, unambiguously contemplates that you were given an address and a phone number so that you can come on short notice to a hearing. And yet you were given addresses to general delivery in a small village that may or may not ever reach a member of the family, that may or may not ever contact the individual or the individual contact him or her. And consequently, the notice is just virtually no notice. I would respond to your Honor by saying that that's the accountability loop that Congress created. If the petitioner, if the individual provides an address that they're not likely, at which they're not likely to receive notice, that's on them. They're given the opportunity to write a good address, to get notice of their hearing. That's an absurd result. I know that it is an absurd result. They give up the right then to participate in their removal proceedings. Well, given the address is to get them back before the INA or the board, the immigration judge. Sure, sure. That's the purpose. And they have every incentive then to provide a good address, which in this case, the petitioner absolutely did. And had the government, in any event, it doesn't relieve the government from complying with its requirement. Address means, or could mean, address in connection and in context of this statute and the purposes of furnishing the address, which further defines the term address. I mean, the agency could conclude that. We probably may not be able to conclude that, but the agency could, and then we'd take a look at it, I suppose. The agency's decision here made clear that it was reading into the statute that an address at which the individual could be contacted must be a U.S. address. From that, you know, from a practical point of view, that just doesn't work. We know it. Right. And the petitioner would argue that the statute unambiguously provides otherwise. In this court, given that the agency has had, already had its first bite at the apple, this court already denied the government's motion to remand earlier in these proceedings. This case is the best vehicle to really address what this statute means. In this case, I will just remind the court that the BIA explicitly found that Ms. Luna Garcia provided an address at which she could be contacted. But I mean, if you interpret address the way you are interpreting it, it could be a place that I lived 20 years ago. That is an address. I did live. It's just a plain, just furnishing address, wherever it may be. The address has to have some contextual meaning. Time and place. Sure. Sure. And I think in a statutory scheme, the statutory scheme certainly provides that context. I mean, the address is for notice purposes. The individual knows that. Is it just for notice purposes? Or is it also so that you can keep up with where all these people are who have come into the country and you don't want to lose them because you're letting them out and not detaining them? Is it not just so that you can provide, I'm asking under this statute, is the only purpose so that you can provide them appropriate notice? Or is it also so you can sort of try to keep track of the people and find them if you want to go pick them up? Under this statute, the purpose is notice for their hearing. Only notice. Certainly, the agency has promulgated regulations and requires individuals to maintain a current address, as Ms. Luna Garcia is currently doing here. She's in contact with the agency every 90 days at present. So absolutely, in many respects, the address is maintained for the purposes of maintaining contact. And if you did it foreign, you wouldn't be able to do that. I'm sorry? If it was a foreign address, you wouldn't be able to know where the people who you've released on their PR bonds or whatever, where they are around the country. Even for statistical purposes, if you don't require a U.S. address. That may be true under the statutory provisions and the regulations that govern that procedure once the individual enters that state of their rural proceedings. Here, the purpose of this address was for the government to provide written notice of her removal hearing. That's it. And she provided an address that the agency has made clear was sufficient under that statute. Thank you. We have your argument. Thank you, Your Honors.